Please be seated. Your Honor, this is the second case of the morning, called 210-1325, a case of the State of Illinois v. Socorro-Maya. On behalf of the athlete, Mr. Paul Rosner. On behalf of the athlete, Ms. Joan Griffin. Members, you may be ready. Good morning. May it please the Court, Counsel. Your Honor, this case comes before you to review the second stage dismissal post-conviction petition. There are two issues raised. One is whether the dismissal can be affirmed on the grounds that there was no notarized affidavit as required under Section 122-1. And second, whether the defendant has made a substantial showing of his ineffective assistance of counsel claim to merit further proceedings. I'll talk about the first question briefly. I want to focus on the merits and especially on the issue of prejudice. Regarding the absence of the notarized affidavit, I think we can dispense with that fairly quickly. The State has forfeited that ground for dismissal because it was not raised in the trial court. I'm relying on the special concurring opinion by Justice McLaren and Nitz, which the majority of this Court has adopted twice in the Kirkpatrick case and more recently in the Turner case, both of which I have motions leave to cite as additional authority. Those motions are still pending. But based on those cases, I would- Oh, your motion to cite additional authority? Right. There are two. That would be granted. Okay. There are actually two of them, but anyway. When did you file the Kirkpatrick one? In June. Okay. And the Turner one I filed last week. Right. So moving to the merits, the claim that the defendant made is that his trial attorney, Mr. Bruno, was ineffective because he did not preserve and assert the defendant's statutory speed trial rights. First, I want to remind the Court that what the standard here is, and that's just a substantial showing of a constitutional violation. And I say that because on page 21 of its brief, the State talks about the defendant's failure to definitively establish prejudice, and I think definitively is not the standard here. It's a substantial showing. And that's language from the statute as opposed to- Yes, but from the statute and the case law. Right. As this Court knows, there are two parts to an ineffective assistance claim. The first part being the so-called prejudice prong, which focuses on what counsel did or did not do, and then the prejudice prong, which focuses on the consequences of that act or omission. So we'll start with the performance prong. Our claim is that the defendant has made a substantial showing that Mr. Bruno acted unreasonably. He knew that his client wanted a speedy trial. He should have, but did not make a written demand as required by the speedy trial statute when the defendant was released from custody on April 15 of 2003. And by doing so, he not only failed to trigger the 160-day period that applies to out-of-custody defendants, but he failed to capture the period of time from his demand while the defendant was in custody. He seemed to mention it every time he had an opportunity to, and the trial court seemed to acknowledge it. He did mention it, but the key thing that he failed to do, that Mr. Bruno failed to do, was to perfect the- to trigger the speedy trial term running by filing a written demand after the defendant was released from custody. I think, looking at the record of this case, I think the parties wanted a misapprehension that the demand that was filed while he was in custody was sufficient to start the 160-day term, but I don't think that's the law, and we're not making that assertion. All right, so you're not even arguing that that January 30th written motion that he ultimately filed a couple weeks after he made the oral demand is not going to help you here? Well, it helps in a sense in that that's the very latest that the in-custody time would count, but he only gets the in-custody time if he then perfects the demand or makes an additional demand after the defendant is released from custody. That's my reading of the speedy trial statute. There is no strategic reason not to preserve a defendant's speedy trial rights. There is no reason why a defense attorney would keep that arrow in his quiver. There is no evidence here that the defendant changed his mind about wanting a speedy trial after he was released. There's nothing in the record to indicate that Mr. Bruno had a valid reason for not filing a written demand. So at the very least, we need an evidentiary hearing to determine whether, in fact, he had a valid reason for doing so. And he did, in fact, raise, counsel raised the speedy trial issue in the post-trial motion, correct? He did, and apparently during, before the trial or second day of trial, filed a motion for dismissal based on speedy trial grounds. We don't have the written motion in the record, but it appears through the hearing on the post-trial motion and the post-trial motion itself that Mr. Bruno was under the impression that the 120-day term was running and that the motion was denied on that basis, that the 120-term, the 160-day term actually applied, and that however they were counting, the court and the state presumably thought that the 160 days hadn't run. Which really brings us to the President's prong, and that's, is there a reasonable probability of a different result? That's what Strickland requires. So the first question is? Did the trial court, on that line, did the trial court address at the motion, or the ruling on the motion, the 103-5C issue, the extra 60 days? Are you referring to the hearing on April 15th, Your Honor? Right. There was actually no request made under 106-C at that, or 103-C at that time. No, but I thought, did the trial court ever address that and say it was something that was speculative? Yes, the court did say that. That was at the motion? That was at the hearing on the post-conviction petition. It never really came up, I don't believe, on April 15th or at any time prior to the post-conviction proceedings. But the trial court, which is the same judge that presided at the trial, refused to speculate that that would have been random. So, again, the first question in assessing prejudice is, did the 160-day term expire before the trial? The answer to that, from our standpoint, obviously has to be, yes, it did. And I can go through the calculation in detail, but I don't want to take up time to do that. Suffice it to say that, by our calculation, you start on January 9th when the oral demand was made while the defendant was still in custody, and you go to June 24th, that is 166 days. And I'll just briefly mention that in my reply brief, I think, I mistakenly said that's 167 days. I accidentally counted one day twice, but it really doesn't matter because either way they're over the term. So you're at 166 days. That doesn't even count the additional 54 days from August 14th to October 7th, which, as discussed in the briefs, is also trivial to the State. Now, the State, in its response, doesn't really dispute the computation of the term. It does not argue that the term, in fact, had not run. I think they essentially concede that it had, if you look at page 21 of the State's brief. The State's primary argument is a counterfactual, a what-if. Well, what if Mr. Bruno had filed a written demand on April 15th when the court decided to let Mr. Maia out on custody at the State's request? The State's argument is, well, we would have tried it within the term then because we wouldn't know when the term was running. Like I said, that's a what-if proposition. Those are hard to prove. They're hard to disprove. But I think there is some evidence in the record that suggests an answer or provides some insight to an answer. If you look at the hearing on April 15th, I think it's page 6, actually, of that transcript, the prosecutor says the trial at that point had been set for April 29th. The prosecutor comes in on April 15th and says, Your Honor, we're going to need an extension from April 29th because our witness, Dr. Strada, is not available. He can't be here until the third week of June. And they wind up continuing it on the State's motion until June 24th. But here's the important point. On April 15th, the prosecutor tells the trial judge, by our calculation, April 29th would be the 86th day. Now, that's incorrect. Whether you start from January 9th or whether you start from January 30th, that's incorrect because if there had been a written demand on April 15th, it would have recaptured that in-custody post-demand time in addition to whatever time ran off after the out-of-custody demand. And so if you add the time from April 29th to June 24th, that's an additional 56 days. So by the prosecutor's calculation, June 24th, the day set for trial, was the 142nd day. Well, in fact, it was the 166th day outside the term. So that's the key point. So there's a bad math? On the part of the prosecutor, right. Did not count the days properly. And there's no evidence that if the demand had been filed, there's no reason to believe that the prosecutor, if the demand had been filed on April 15th, there's no reason to believe that the prosecutor would have realized that he had miscalculated. I think there's at least a fair inference that the prosecutor would have continued to miscalculate and would have thought that June 24th was within the term. And therefore, there is no need to advance the trial date. Is there any dispute from this record, which isn't as helpful as I would have liked? Is there any dispute in this record about who requested, who objected to these continuances along the way? Or is that pretty well settled because it's not the best record? I think it's pretty well settled. I'm not sure which specific dates you want to talk about. But I think certainly the period from April 29th to June 24th counts. And again, as I said, you know, we can tack on the additional 54 days from the middle of August to the beginning of October. And that's 54 days right there, plus the 56 days. And then if you have the pre-release time, if you start even with January 30th for that, you get over 160 days. And I think if you look at the record and look at the orders, you'll see that none of that time can be attributed to the defense. And in fact, the trial court treated it that way because on April 15th, or I'm sorry, rather on January 9th, the trial court essentially responded to Mr. Bruno and said, I understand you're demanding trial from here on out. And the defense never really backed off that position. So the prosecutor said we're on day six on April 29th. He said it on April 15th. Right. But he said that the 29th would have been the 86th day. Okay. And then while the defendant was still in custody, the case was continued to June 24th? No. The state's proposal on April 15th was because they had to wait until June for Dr. Scotti to come back, that there wouldn't be a 120-day term problem if they wait until June 24th. Oh, that's when they released him. So that's when they released him. The state actually wanted to keep him in custody until they got the 820, but the judge did not want to do that. So that's the date they released him. You're saying that this 142nd day, your argument is the state still believed they were within the 160-day term at the time. Exactly. Right. And, you know, I think there are reasons, again, to infer that the defendant could at least make a, you know, could show a reasonable probability that a speedy trial motion would have been granted. In other words, that the prosecutor would not have realized his mistake and advanced the trial date early enough before June 24th to be within the term. Before June 24th, the defendant had not waived a jury trial. So as of April 15th, as of April 29th, the prosecutor believed, had no reason to believe otherwise, that this would be a jury trial. On April 15th, the prosecutor had come in and said, we need a continuance because we need Dr. Scotti. I don't think that a prosecutor would risk starting a jury trial without making sure that all of its witnesses were available, because you couldn't count on getting a continuance to get that witness there. And so it wasn't as though, okay, we can, fine, we can start a bench trial. We'll call one or two witnesses. We'll avoid the term problem that way. They felt like they needed Dr. Scotti there to proceed the trial. That's why they asked for the continuance. He was not available until June 24th. By that time, the term had ended. Is there some argument that by releasing the defendant on April 15th and continuing the matter to June 24th, that there was some tacit agreement to the 60-day continuance to obtain a witness, that the judge did that? No. The order doesn't support that. I don't think the transcript supports that. In fact, my recollection is that the order shows that it was on motion state. But not for the additional 60 days. No, no, no. There was never an order saying, because that would have taken you, because then the state would have said, that would have been the only alternative the state had, would have been to come in on April 15th and say, we need an extra 60 days tacked on to 120 days, leave him in custody. The judge wasn't going to leave him in custody. So the state never asked for that. And once the judge released him, the state knew, should have known, that there would be no clock running until there was a written demand flag. They apparently didn't realize that because they thought the clock was still running. But there's no indication that that was anything but motion state, and that the defense in any way agreed to that, or that there was a 60-day extension under subsection C. And this presumption in Murray wouldn't have kicked in based on your argument? The presumption in? In Murray, the Murray case, the dicta at the end of Murray, talking about if a prosecutor makes a motion for continuance, we can presume that it's in 60 days. Well, yeah, I think that that is dicta, for one thing, as Your Honor pointed out. And second, there was no request to your end to the extent that we know anything about this at all. The trial judge indicated he wouldn't assume that he would have granted that. And so at the very least, I think that would be part of the evidentiary hearing, is to determine, well, if you had asked for it, I would or would not have granted it. And that's, again, to get back, I know I'm over my time, but just to finish the point, that's where you get into the difficulty of trying to prove these what-if situations, because you're looking back and it's like, well, if you had given me this request for the extra 60 days, what would I have done? All you can ask is for people to answer those questions in good faith and to make decisions based on that. But I think at the very least, we need more information here, and that's the purpose of advancing into the third stage. So unless the Court has further questions, that's what I'd ask. This defendant was released on an i-bind, right? Pardon me? An i-bind? Yeah. I don't think that makes any difference. Well, what was his original amount? Your Honor, I want to say it was $50,000, but don't hold me to that. I really don't remember. Whatever it was, he didn't make it.  You ready to proceed? Please, the Court. Joan Kripke on behalf of the people of the State of Illinois. Counsel. A couple of preliminary things. First of all, I do want to address the ineffective assistance, excuse me, the unnotarized petition issue, but I will do that second. First of all, counsel has used the wrong standard of review. He's talking about what trial counsel didn't do. That is not unreasonable assistance. That's ineffective assistance. We may be up here on post-conviction, but what has to be determined is whether that counsel was ineffective for failing to make the demand. And so it's not the lesser unreasonable assistance standard. Second of all, there's a lot of talk about what the people didn't do. The bottom line is his counsel did not make the demand. Everything else is speculation. Who would have done what, when, perhaps would they have recalculated, would they have looked at it again? That's not of record. Are you agreeing that the, although I didn't seem to see it in the brief, that the additional 60 days, if it had been requested, it would have been granted, that's also speculation? It is speculation. It is speculation. None of it is carved in stone. We don't have an answer because it didn't happen. But when you asked Justice Hutchinson about did everybody agree to how the continuances shook down, I remember calculating when they said, oh, the state didn't argue about our numbers. I must have, granted, math is not my forte. I must have tried to calculate it any number of times and every time I came up with a different number because I could never figure out if both parties were agreeing, if one party had made the motion for the continuance. It really was not a clear record. And just to say, well, the state had miscalculated, they came up with a wrong number, let them make the demand and let the prosecutor go back to his office and sit there and look through what the days are and then come back into court. And if we make a mistake, we make a mistake. The bottom line is here, they didn't make the demand. Well, but wasn't the state's position, hey, if there was a demand, we can still get it tried within 160 because the 24th is within that period of time. But the problem is here. I mean, that was a representation. That was a representation. But the bottom line is here. Let's ask what the person did. Did they make the demand? And the answer is no. Counselor Bruno did not make the demand. So now let's talk about what does that mean in the greater scheme of things. I disagree that this cannot be trial strategy. It is not a determination made by the defendant. In fact, whether or not to make a speedy trial a demand is something within the purview of counsel. And there's a very good reason why counsel may not make a speedy trial. Because, man, they may not be ready to go to trial. And if the state says, great, let's do it tomorrow, and the court looks at its calendar and says, can't do it tomorrow, but I can do it next Monday, and they don't have their witnesses lined up, they're stuck. They're stuck with that. You can always call their bluff on it. So they could make that demand, and then you've got a bigger problem. Then you've got a counselor going to trial without his case being ready. But then you have in post-trial motion a clear speedy trial violation. And on the second day of trial, there is the written or whatever motion to discharge because of the speedy trial. So if he's hedging on the front end, why would he make those allegations or complaints on the back end? Because he's had a lot of time to think about it once he's realized he's lost the trial. And now he's got, ooh, maybe I should have done this. That's great. Hindsight is wonderful. But the fact of the matter is he just didn't do it. But the thing is, is that it's still trial strategy. It's not something, a decision that gets to be made by the defendant. But the evidence in this case shows, like in Willis, I mean there's evidence in the record to show that defense counsel intended to make a speedy trial demand. Defense counsel made it on January 9th. He followed up with a written one on January 30th. And he objected to his client being released on the state's effort to avoid the speedy trial term from running. So we have, just like in Willis, where a lot of times a speedy trial demand certainly could be seen as trial strategy. But where the record shows, unequivocally, that counsel intended to make a speedy trial demand, that that strategy prong doesn't fly. And at least it certainly, arguably, amounts to a substantial showing of constitutional violation. And what did they decide in Willis? What happened in Willis was the counsel did the wrong thing. He made the demand under the wrong statute. And the court came back and said, you know, you really screwed this up. This is really ineffective assistance of counsel. But the second prong of Strickland was not proven. I know that. But it's important. Counsel, I know it's important. You're arguing trial strategy now. We'll get to prejudice in a second. So I'm trying to hone in on that prong of Strickland. And I'm telling you what Willis says, or at least what I believe Willis says. Okay. I think the record here is equally, or at least arguably equally, you know, shows the intent of counsel, as in Willis, to file a speedy trial and persist in a speedy trial. Do you agree with that or disagree with it? I somewhat agree with it. Only because, I mean, the part I disagree with is that in Willis the counsel actually made a demand. He did something. He filed something. He did it wrong, but he did it. This man talked and talked and talked and didn't do it in the end. So we don't know what his intent was. Talking a good game, didn't do it. I mean, there's a difference between actually filing that paper and putting, you know, saying I'm taking a stand, I'm ready to go to trial, like the person did in Willis. And here he didn't do it. But assuming you end up, that you're going to say that it is an effective assistance of counsel for him not having made that demand, just like Willis, you can't, there's no, there's a lot of speculation going what the state might have counted wrong. They might have done this wrong. They might have done that. The bottom line is nobody knows what we would have done because he didn't make the demand. And, therefore, you cannot prove the second promise, the second promise. So why don't we go to an evidentiary hearing and find all this out? Because it's, why? Because he can come back in and say, well, yeah, I was going to do that. Because there's no record for it. There's no proof of it. No proof of what? There's no, because he had to have made that demand. Okay, let's assume he didn't. Well, we know he didn't make the demand. Let's assume that that's ineffective assistance on the competence part. Let's just assume that first. Okay? So now you're talking about, it's a lot of speculation as to what would have happened had he made the demand. But let's say now he is incompetent for not making the demand. Now we move to prejudice. Okay. How does the defendant not get an evidentiary hearing? How is this not a substantial showing of prejudice? Because you, because how do you, so he'll come in and say, oh, yeah, I, you know, we would have done this. And the state will come back in and say, and we would have gone, we would have gone to trial within the 160 days. How do you show the prejudice? Well, you didn't have a witness. Your witness wasn't available at that period of time. And then we would have said, so we would have filed a motion. And we would have filed that 60-day motion. And that seems to be the crux. How do you know that the trial court would have granted that 60 days? And that's the crux of it. Nobody knows any of this. It's all speculative. And on the second prime of strict rule, you have to do more than speculate. You have to demonstrate. And they can't demonstrate because they didn't make the demand. And the bottom line is they have to make the demand. Now, the defendant, you said something that I want to clarify. Okay. You said that, you know, he could have filed a speedy trial demand that says we're ready to go to trial, let's go. A speedy trial demand doesn't mean that, does it? It means that we're ready to go to trial within the statutory period of time. But it doesn't mean we're going today. That's correct. But what if the state said, fine, we're ready, let's do it? Well, they didn't have a witness. But we're talking about speculation here. We're talking about what ifs. What if they had made that demand? Then the state would have said, well, okay. We're talking about in general. We're not talking about this case. In general, what does a speedy trial demand mean? It means we're saying we're ready to go to trial and we're ready to go to trial. It means we're ready to go to trial within the statutory period. It doesn't mean we're ready to go to trial tomorrow. Well, okay. Because it's filed normally right at the very beginning of the case. Well, maybe it should be. I'm finding fewer and fewer cases where I ever see anybody making demands of anyone. In my days on the criminal court, nobody was ready to go to trial the next day. I understand that. But also, just like the argument that's made about what the state has to do at the second stage of a post-conviction petition where we're supposed to raise all kinds of issues to give notice to the other side, that argument also applies to the defendant. If he wants to go to trial, then make your demand and put us on notice. If he says, oops, we've got to take our shoes and socks off and start counting to make sure the clock doesn't run. So your argument is a defendant can never succeed in an ineffective assistance claim for failure to file a speedy trial demand because a speedy trial demand was not filed. Because it's also trial strategy. Well, let's leave that aside. Again, we talked about Willis and we talked about how this case might be similar to Willis, and we can theoretically say that's not strategy. So let's put that aside for a second. Your argument is you've got to file that demand to put everybody on notice. So to take your argument full circle, a defendant could never, ever, ever succeed on an ineffective assistance claim for failure to file a speedy trial demand because a speedy trial demand was not filed. I think that they could succeed if you had a very clear record where it was determined who was making what continuances and where the numbers came down. Are you disputing that? Because, I mean, as I read your brief, it looks like you are generally agreeing that the continuances as identified have been correctly attributed. No, what I said at the very beginning was I can't figure out who is agreeing to what all the time. And so if you had a very clear-cut record that there were X number of dates and they were attributable to the State and we still didn't bring you to trial, then I think you can make that speedy trial demand. But in here it was pretty amorphous. It was not a clear-cut record. And the defendant has to make that record. Do you agree or did you agree in your brief that the defendant was not brought to trial within 160 days? Yes. I can see that, but I cannot tell you how. As I recall, I tried to count it out because I want to see if they've counted it out right. And I sit there and I pull out the calendar and I start looking at this and I go through every single order. And I must have done it. I can't tell you how many times I did and I kept coming up with, well, what if they really meant this or what if they really meant that or who was really doing it here? Should I attribute it to both of them? I don't really know. Those orders that you looked at never, at least in my recollection, maybe there was one, but for the most part, didn't have no tolling X, correct? I think that would be true. That would be a pretty good indication. That may be true. Of the court's understanding. No, that could be an indication of the court just being negligent in how they write out orders. The court does not draft orders, counsel. Pardon me? The court does not draft orders. Counsel drafts the order. True. But it also, well, okay, true. But I also want to say that what the defendant relied on, relied on two cases that he took us to task for for not responding to, two cases called Sifford and Sanchez. And I went back and looked at these cases and this is probably why, you know, maybe I should have responded to them in the brief, but neither one of those cases is on point with this case. In Sifford, the attorney failed to raise a statute of limitations issue. And the case law, and what Sifford says is this is, first of all, it's clearly prejudicial error. And second of all, the statute of limitations issue can only be waived by the defendant, not by counsel. So that's not applicable in this case. And in the Sanchez case, the attorney failed to object to the admission of a prior conviction under Montgomery and whether or not they calculated it wrong in terms of it falling under the 10-year time limit. And they said, and so the prior conviction was brought in. And there they were able to point. They said this was definitely prejudicial because this information was brought in and was put before the jury. And so that's why those two cases are not, are inapplicable or inapposite to this case. I don't think that this case should be sent back for the third, for the third, a third stage hearing. Because you simply, we simply don't know because the defendant didn't make the demand. And we, and there's too much speculation of what would have happened further on down the line. I did want to go, since I have two of you here from Turner and one of us here from Fitzpatrick. But I would like to address the issue that I raised in a petition for rehearing and also another issue that I know that Justice Burke was raising when we did the Turner argument. As I think I recall correctly, what you said to me, or what you said was that I was being, we were being hyper-technical by raising the issue that on appeal, we, the state, couldn't say that they had waived their argument that there was unreasonable assistance of PC counsel for failing to correctly file a notarized petition. And I had a real hard time with all these standards of who's waiving. And it always seems like the state is on the wrong end of all of this. That we can always waive something, but the defendant can never seem to forfeit anything. On appeal, the defendant is the appellant. They forfeit issues that they do not bring in their brief. And in this case- Well, they didn't need to know to address it because the state never addressed it at the trial court. Wait a minute. Who would have brought this at the trial court? I'm talking about on appeal. Well, it has to start somewhere. It doesn't start on appeal. Things go back. Yes, but as an appellant, what they are supposed to do is say what went wrong at the second stage. And this had already been on file for quite some time, long before the brief in this case was filed by counsel. They have benefit of that, and they should say, Oh, maybe we should raise the issue that there was unreasonable assistance of our PC counsel at the second stage for failing to file a notarized amended petition. And then we can ask them to send it back. But I don't think they get to all of a sudden jump on and start raising that in their reply brief after we've said you've now forfeited that issue. Why is that hyper-technical? Why are they not responsible for any of their actions? This defendant had counsel. What you're saying is the state has to constantly hold the hand of the defendant. The defendant comes up at the second stage with counsel, yet it's our obligation to tell this counsel that he should file a notarized petition. Why is that our obligation? Well, because maybe you could have had it dismissed at the trial court and we wouldn't have even been here. The state is there throughout. Right. Pro se, defendant first, then we get counsel second stage. But never in the cases that I've been involved in has the state at the trial court level said, Judge, don't hear this petition. It's not here properly. But that's not the decision, because that's not the argument they're making. What they're saying is, and they've consistently made is, if the state had put us on notice at the second stage that our petition was not done because, gee, we didn't happen to open the statute book and see what was required, then we could have amended it on the spot. That's their argument. They're not coming in and saying, I've never heard this court say, and it would have been dismissed at that stage. So the state is using a strategy? No, the state is not using a strategy. But I'm going to point out again what you've just said was, why didn't the state make this point at the second stage? Well, why didn't the defendant in this case say, I'm making my 160-day demand and put us on notice? Who gets to be put on notice? Only the defendant? We never get to be put on notice for anything? We never get, they never get to be forfeited out of anything? Only the state does? We're the appellee in this case. We shouldn't be forfeited out at the second stage. We're the appellee. We can bring up anything of record. I think in both Turner and I know in Fitzpatrick, this court said that the purpose of this particular statutory authority post-conviction petition is to resolve the case on the merits. And we didn't say not to just sweep it under the carpet. That's what we've done. We've resolved the case on the merits. And that should be the state's concern as well, I think, to resolve it on the merits. The state apparently doesn't have that concern. That's not true. That is not true. It's the defendant's, in the defendant's interest to get it resolved on the merits. And if you want your case to be heard in a court of law, then open the statute book and look at the requirements and fulfill those requirements. And don't depend on the state to say, guess what? It's not timely. Guess what? You didn't do this. All of a sudden, everything, it's like 604D. All of a sudden, it's their obligation, and if we don't raise it, it goes bad. Same thing here. If we don't raise this, all of a sudden, that's okay. They get to put anything through. And I want to go back to the reason why I also think that the decision that even though maybe this is dicta, it sounded like it was an opinion to me in this case, but I do want to make it for the record. The reason why we believe that you can dismiss at the first stage when we are not present for lack of notarization is for this reason. It can be, a petition can be dismissed when it's frivolous and patently without merit. And what frivolous and patently without merit means that there is either lacking a basis in law or fact or both. And the courts have come down and said you can dismiss when it's lacking in law, a foundation in law, if it's been res judicata'd out. And our argument is what is the purpose? And the court has held and the Supreme Court has held the purpose of a notarization is to verify the truthfulness of the allegations. And if you don't have that notarization on there, then you don't have a foundation in fact either. It's just, it's as race judicata is to law, as the notarization is to the foundation itself. Well, the Supreme Court may agree with you and Henderson that they haven't made that decision yet. Okay, thank you very much. Thank you. A decision in good time will be in recess. Oh, I'm sorry. My head's hurting. No, I'm sorry. My mistake. I sympathize with counsel's feeling constrained by the doctrine of waiver and forfeiture. I disagree that that burden falls more heavily on the state, but that's something we don't really need to talk about. Just on that point, though, I would point out, first of all, this is not a first stage proceeding, so we don't need to talk about that. This is a second stage. And really, this went to a third stage on one of the claims. They had an evidentiary hearing. At no point during the trial proceedings on the post-conviction petition did the state say, oh, by the way, this is not notarized. Suppose the defendant had won the evidentiary hearing, got relief. Could the state have come back in and said, motion reconsidered, this wasn't notarized, and then say, okay, fine, we'll notarize it. Now we'll have all the same evidence we had before. That is putting form over substance, and that's what's trying to be done here. So for the reasons I've stated to Patrick and to Turner, as you said, we'll see what the Supreme Court has to say about that. But I would stand on that as far as that issue is concerned. On the merits, I have a few points. First of all, I want to clarify something and correct something, I believe, in answer to Justice Hutchinson's question about what the order on April 15th said. The actual order, what I put in my brief, and I guess I have to stand behind that, is that the order was blank. It was a situation like Justice Jorgensen was talking about where it wasn't checked off. But on the record, the court says it's granting the state's request to continue the trial. And also, in connection with what Justice Jorgensen said, judges don't draft orders. They do sign them. I believe that this order was drafted by the state's attorney. I could be wrong about that, but I believe that it was. And therefore, by not checking the box when the judge signed it, it reflects no term being told. So that's... I understand that the state asked for a continuance, but did the state ask the state representative, I can't get him back until April 24th. Did they also say... I'm sorry, June 24th, right? Now my head is hurting. But did they say, we are requesting an additional 60 days in order to get... So that motion was never made. It was alluded to but not made. It was alluded to. I don't really remember whether it was even alluded to on the April 15th date. It was alluded to during the post-conviction proceedings when the state made that argument, the same argument they're making now. But certainly there was never any motion made. There was never any hearing about whether, you know, Dr. Strada would have counted as a material witness, whether the state would give due diligence. And that's one of the things I think we keep in mind. You can't assume that that 60-day extension would have been granted because at that hearing, the prosecutor said, I've been in... We've had Dr. Strada here twice within the last month. Oh, now he's in the Virgin Islands. I've got email contact with him, but he's in the Virgin Islands. I can't subpoena him. Well, he was there a month ago. You could have subpoenaed him then because you had an April 29th trial date by then. So that's never explained. I want to clarify one other thing about the appropriate standard here. There's two things to keep in mind. There's a standard of review for reviewing a second-stage dismissal. And that standard is whether the defendant has made a substantial showing of a deprivation of a constitutional right. The standard that applies for ineffective assistance claims includes the performance prong. Performance prong is defined in terms of reasonableness, reasonably competent assistance. If counsel does or does not do something that falls below reasonable professional standards, that counts under performance prong. And then you get to the prejudice question. So I think this case is almost on all fours with Willis in that here you had, in Willis you had somebody that made the wrong demand, never made the right demand. Here you have somebody that made a demand while the defendant was in custody, made a written demand while the defendant was in custody, never realized had to make another demand after the defendant was released from custody. And to me, that's virtually the same as counsel in Willis, not realizing I made a demand under 103.5a. I'm supposed to do it under the Interstate Detainers Act. I don't see any meaningful difference there. The court went out in Willis to say no prejudice because the record didn't show any prejudice. One way in which this case, and I'm glad you mentioned that because it reminds me to make this point, which is important. One way in which this case is distinguishable from Willis and it's distinguishable in the defendant's favor is that Willis was a direct appeal. So the question there was whether the defense had shown its ineffective assistance claim enough to be granted, relief to be granted on that claim. Here the question is, it's a lower hurdle. Have you cleared the substantial showings standard threshold for getting an evidentiary hearing on your claim? So really, Willis would come in more into play if this had been after an evidentiary hearing and we hadn't answered all these questions like, well, Mr. Bruno, why didn't you file a direct? Why didn't you file a demand on April 15th? Counsel's correct. A lot of this is speculation. I don't know what Mr. Bruno would say. Maybe he would say, the defendant told me he didn't want me to. Maybe he wouldn't say that. Maybe there would be evidence about what the prosecutor had to say to somebody. I mean, there's lots of possibilities and we can speculate about them, but this isn't the place to do that, and that's why we have evidentiary hearings. So that's why I would renew the request to reverse the dismissal of the petition and to grant an evidentiary hearing. Thank you. Now we will close the hearing.